IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| THOMAS E. MITCHELL, | |
| Plaintiff, | |
| vs. | No. 06-2442-JPM-dkv |
| MARK LUTTRELL, et al., | |
| Defendants. | |

---

ORDER DENYING PLAINTIFF'S MOTION TO STRIKE
ORDER DENYING PLAINTIFF'S MOTION FOR ISSUANCE OF ORDER
COMPELLING ALL DEFENDANTS TO SUBMIT AFFIDAVITS
AND
ORDER GRANTING IN PART AND DENYING IN PART
THE CMS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

On April 25, 2008, Defendants Adair, Atkeison, Boyd, Lovelace, Sample, and Watkins (collectively, the "CMS Defendants") filed a motion for summary judgment, supported by the affidavits of Jerry Lovelace, M.D., Julie Atkeison, N.P., Rebecca Watkins, C.M.S.W., and Alaina Sample, R.N. (Docket Entry ("D.E.") 104.) Plaintiff filed a response in opposition to the motion on June 3, 2008, which was entitled "Motion requesting trial Judge to deny motion for summary Judgment filed by CMS defendants" (D.E. 118), and the CMS Defendants, with leave of Court (D.E. 119), filed a reply on June 3, 2008 (D.E. 114).

On June 5, 2008, Plaintiff filed a motion to strike the affidavit of Julie Atkeison because it contained what Plaintiff believes to be irrelevant references to the fact that he is HIV

positive. (D.E. 125.) There is no provision in the Federal Rules of Civil Procedure that authorizes a district court to strike an affidavit in support of a motion for summary judgment. Much of the affidavit submitted by Defendant Atkeison pertains to matters at issue in this lawsuit, and the Court can and will disregard any irrelevant statements.[1] The motion to strike is DENIED.

On June 5, 2008, Plaintiff filed a motion, entitled "Motion requesting Court to issue an Order directing the defendants to include the affidavits of defendant Boyd, Adair, and defendant Sample as originals" (D.E. 126), that seeks an order directing Defendants Boyd, Adair, and Sample to submit affidavits in support of the CMS Defendants' motion for summary judgment, as they have personal knowledge of the events at issue.[2] Defendants cannot be compelled to provide additional support for a motion they filed. The absence of the affidavits of these defendants will be taken into account in evaluating Defendants' motion. This motion is DENIED.

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained:

---

[1] In their reply, Defendants concede that "Nurse Atkeison's recollection about HIV-positive was simply her providing part of her history regarding Plaintiff's treatment at the Jail. Whether or not the records regarding his HIV are accurate or not is of no consequence in deciding the summary judgment motion." (D.E. 114 at 2.)

[2] Defendant Sample submitted an affidavit, which is found at D.E. 104-9. It does not appear that Plaintiff is complaining about a defect in this affidavit but, rather, that he has overlooked it.

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).[3]

---

[3] Rule 56(e) sets forth in detail the evidentiary requirements applicable to a summary judgment motion:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to all the matters stated therein. Sworn or certified
> (continued...)

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

Defendants have submitted the affidavit of Rebecca Watkins, a Certified Master Social Worker at the Jail, who states that, "[w]hile I do not have a personal recollection of Thomas E. Mitchell, I have reviewed computer records at the Jail and I can

---

³ (...continued)
copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

find no record that I have ever communicated with or worked with Plaintiff Thomas E. Mitchell. Those records show that I never performed any intake assessment on Plaintiff. I never provided social work or mental health services for him." (D.E. 104-8 at 2.) Ms. Watkins also states as follows:

> 5. I think that I was sued by mistake by Plaintiff because there was a nurse that worked at the Jail who was also named Watkins. People frequently confused me with her, to the point where our time sheets would become mixed. I think that Plaintiff intended to sue this other Watkins instead and not me.

(Id.) Plaintiff's complaint indicates, on its face, that he intended to sue a Nurse Watkins. (See, e.g., D.E. 5-2 at 1, 13.) Although Plaintiff did not address this issue in his response to the summary judgment motion, at a pretrial conference on June 13, 2008 he agreed that the complaint against Rebecca Watkins should be dismissed. The Court GRANTS the motion for summary judgment filed by Rebecca Watkins and DISMISSES the complaint as to her.[4]

Analysis of Defendants' motion for summary judgment is complicated by the fact that the motion does not address the central allegations of Plaintiff's complaint that he received inadequate treatment for his genital herpes while at the Jail. It is undisputed that Plaintiff was housed at the Jail twice during the events in questions, the first visit lasting from October 25, 2005 until November 15, 2005 (D.E. 1 at 14, 17; Affidavit of James E. Coleman, sworn to on July 9, 2007 ("Coleman Aff.") (D.E. 41-2),

---

[4] It appears that the summons intended for Nurse Watkins was misdelivered to Rebecca Watkins by Jail staff. This order does not preclude Plaintiff from seeking to properly serve Nurse Watkins. That matter can be addressed by the Magistrate Judge.

5

p. 3),[5] and the second visit from January 10, 2006 until January 19, 2006 (D.E. 1 at 20, 22; Coleman Aff. (D.E. 41-2), p. 5). The complaint, which was sworn to under penalty of perjury, alleged as follows:

> The complaint alleges that Plaintiff was temporarily transferred to the Jail on October 25, 2005, where he stayed until November 15, 2005. Plaintiff allegedly suffers from various medical conditions, including genital herpes. During intake, Plaintiff told a nurse what medications he was taking. "As the days went by," Plaintiff did not receive his medication, causing severe outbreaks in his mouth and on his body and genital areas. After numerous requests to the nurses, Plaintiff signed up for sick call and saw Defendant Lovelace to inquire about his medication. At that time, Plaintiff learned that nobody at Correctional Medical Services ("CMS"), which provides medical services for the Jail, had ordered his medication. Defendant Lovelace then ordered the medication.

> Several days passed in which Plaintiff did not receive his medication. Finally, one of the nurses began bringing him one pill per day, when he was supposed to take five pills per day. Plaintiff advised Defendants that his usual dosage was five pills per day, but no order to that effect was issued. Plaintiff asserts that numerous Jail employees observed his outbreaks and contacted the CMS clinic on his behalf. He further asserts that he made several sick call visits to inquire about his medication and, each time, was told it had not been ordered. During that time, Plaintiff's rash allegedly worsened and he also developed sores.

> Plaintiff also alleges that a TDOC doctor prescribed that he receive double-portion food trays so he could regain some weight he had lost because of his medical conditions but, while at the Jail, he was told he would have to get a medical order. The CMS nurses and doctor that Plaintiff spoke to said they did not issue that type of order.

> Plaintiff was transferred back to the Jail on January 10, 2006, at which time he allegedly encountered

---

[5] Plaintiff's verified complaint is the functional equivalent of an affidavit. Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001); Weberg v. Franks, 229 F.3d 514, 526 n.14 (6th Cir. 2000).

the same difficulties with his medications even though he
had the medications in his possession. Defendant Boyd
allegedly seized the medication and told him he would
receive it as needed. Plaintiff alleges he did not
receive his medication and, as a result, broke out in a
severe skin rash and sores. When Plaintiff left the Jail
on January 19, 2006, his medication was not returned.

(D.E. 8 at 2-3.)

As for Plaintiff's first visit to the Jail, the motion does not address the fact that, at intake, he advised the nurse what medication he was taking, but the medication was not ordered. According to Defendants' statement of undisputed facts, by October 28, 2005, three days after his arrival at the Jail, Plaintiff had submitted a sick call request asking to be treated for a "severe confidential illness." (D.E. 104 at 4.) That day, Plaintiff submitted another sick call request advising that his medication had not arrived with him and he was "hurting." (Id.) Plaintiff asked to see a doctor on October 31, 2005. (Id.) That day, Plaintiff was seen by Defendant Atkeison, who diagnosed him with "oral herpes" (perhaps because Plaintiff "deferred physical examination of his genitals") and prescribed various medications, including 400 mg. Acyclovir, the medication Plaintiff was supposed to receive for his herpes.[6] Defendants' motion does not address Plaintiff's allegations that the medication did not arrive for days after it was ordered or that doses were frequently missed. (D.E. 5-

---

[6] There is some evidence in the record that Plaintiff was taking 1500 mg. Acyclovir while in the custody of the Tennessee Department of Correction ("TDOC"). (D.E. 5-3 at 8.) Later in 2006, Plaintiff's dose of Acyclovir was 4000 mg. (Id. at 5.)

7

2 at 16-17.)⁷ According to the notes of an examination performed on November 7, 2005, it appears that Plaintiff's Acyclovir, which had been ordered on October 31, 2007, had not arrived. (D..E 104-3 at 13.) Defendants also concede that they did not approve double portion food trays, which TDOC physicians had approved to counteract weight loss resulting from some medical condition. (D.E. 104-7 at 2.)

As for Plaintiff's second stay at the Jail, Defendants do not address the claim that Defendant Boyd confiscated the Acyclovir used to treat Plaintiff's herpes upon his arrival at the Jail and did not release it at any time during that stay. (D..E 5-2 at 20.) Defendants, who have not submitted an affidavit by Defendant Boyd, have offered an intake questionnaire, allegedly completed by Boyd from information provided by Plaintiff. (D.E. 104-5.) That sheet reflects that Plaintiff was prescribed Acyclovir and Elavil (id.), a fact that is corroborated by the property form submitted by Plaintiff (D.E. 5-3 at 4). Defendants emphasize that Plaintiff did

---

⁷ The record is not entirely clear, because Plaintiff referred to his complaint, in his sick call requests, as a "confidential medical condition," which could mean herpes but could also refer to his purported HIV positive status. The record is further clouded by the fact that Plaintiff apparently stated on a sick call form that he was suffering a reaction to medication when, in fact, he was suffering from a herpes outbreak. (D.E. 104 at 4-6; D.E. 104-3 at 11.) Plaintiff also alleges he told the intake nurse the name of the medication he had been prescribed, which should have put Defendants on notice that he suffered from herpes. In light of that evidence, the Court is unable to concluded that there is no evidence in the record that Defendants were not put on notice of Plaintiff's condition during his first visit to the Jail.

Attached to the complaint are copies of grievances Plaintiff contends he filed during his first stay at the Jail concerning the denial of his medication. It appears that Defendants seized Plaintiff's Elavil, an antidepressant, when he arrived at the Jail and did not dispense that medication as prescribed. (D.E. 5-3 at 12-15.)

not disclose his herpes on that form, but the form contains no box for "genital herpes," they offer no evidence that Plaintiff denied having herpes, and they also offer no evidence that Plaintiff was suffering from an outbreak of herpes when he was admitted to the Jail. At best, the document undercuts Plaintiff's assertion that he informed CMS staff of his condition; it does not conclusively establish that he did not.

The sole issue presented in Defendants' summary judgment motion is whether the events at issue violate the Eighth Amendment, which prohibits cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care "is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." Id. at 874 (quoting Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001)); see also Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004) (quoting Estelle v. McGuire, 429 U.S. 97, 104 (1976)) ("The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs. . . . Prison officials' deliberate indifference violates these rights

9

'[w]hen the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care . . . ' for a serious medical need."). "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit] has 'long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner.'" Johnson, 398 F.3d at 874 (quoting Danese v. Asman, 875 F.2d 1239, 1244 (6th Cir. 1989)).

An Eighth Amendment claim has both an objective and a subjective component. Garretson v. City of Madison Heights, 407 F.3d 789, 796 (6th Cir. 2005); Brooks v. Celeste, 39 F.3d 125, 127-28 (6th Cir. 1994); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the prisoner have a serious medical need. Blackmore, 390 F.3d at 896; Brooks, 39 F.3d at 128. This component can be satisfied in two ways. "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" Blackmore, 390 F.3d at 897 (emphasis in original); see also Johnson, 398 F.3d at 874.

If a prisoner's need for medical attention is not obvious, "the seriousness of a prisoner's medical needs 'may also be decided by the effect of delay in treatment.'" Blackmore, 390

F.3d at 897 (emphasis omitted).[8] Where a prisoner complains about a delay in medical treatment, the Court will "examine the seriousness of a deprivation by examining the effect of the delay in treatment." Napier v. Madison County, Ky., 238 F.3d 739, 742 (6th Cir. 2001). In those cases, "'[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical information in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" Id.; see also Johnson, 398 F.3d at 874.

The Sixth Circuit has emphasized that

> The "verifying medical evidence" requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care. . . . Napier does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. Napier applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

---

[8] The Sixth Circuit elaborated:

> These decisions involve prisoner claims of delay in treatment that caused injury, loss, or handicap. . . . Other examples involve delayed administration of medication . . . , or a prisoner's refusal to take the prescribed medication . . . , or occasional missed doses of medication . . . , or claims based on a determination by medical personnel that medical treatment was unnecessary. . . . Also within this branch are decisions involving whether the prisoner was treated adequately . . . or whether any delay in providing medical care was harmless . . . , or where the prisoner had a "very minor injury for which many people outside prison would not even think of seeking outside medical treatment."

Id. at 898 (citations omitted).

11

Blackmore, 390 F.3d at 898. Where a prisoner's need for medical attention is obvious, "the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." Id. at 900.[9] In those cases, the prisoner may recover for the pain and suffering attributable to the delay. Id. at 899 ("In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition. Blackmore was suffering from appendicitis, and it is sufficient that the officers' delay in treatment of an obvious medical emergency posed a substantial risk of serious harm to Blackmore by subjecting him to unnecessary infliction of pain.").

Defendants have conceded, for purposes of this motion, that genital herpes is a serious medical condition (D.E. 104 at 10), which appears to be correct. Prior to his two stays at the Jail, Plaintiff had been diagnosed by a physician as suffering from genital herpes, and medication had been prescribed to treat that condition. Moreover, once Plaintiff experienced a herpes outbreak,

---

[9] See also Garretson, 407 F.3d at 797 ("Here, Garretson is a diabetic whose condition required insulin injections at regulated intervals—a medically required treatment which she did not receive while housed at Madison Heights. As a result of this omission, she was later admitted to the hospital. Even without specific medical records, the emergency hospital admission coupled with a stay of several days satisfies the objective requirement of a 'sufficiently serious' medical need under Farmer and Napier.").

12

with sores on his mouth and penis, a jury would be entitled to find that his medical need was obvious.

A jury could also find that Defendants were deliberately indifferent to the risk of harm to Plaintiff.[10] Plaintiff alleges he notified the intake nurse, on both of his visits to the Jail, of his medical condition and of the medications that were prescribed to treat it. Despite repeated sick call requests and the filing of several grievances, Plaintiff contends that, on his first visit, his medication was not promptly ordered, the prescription was not filled for some time after the medication was ordered, the correct dosage was not ordered and, even after the pills arrived, doses were missed. Because of these omissions, Plaintiff alleges he sustained an outbreak of genital herpes. On his second visit, Plaintiff brought a supply of his medication with dosage instructions, which was confiscated, and he was not given his medication during that stay. As a result, Plaintiff alleges he sustained an outbreak of genital herpes.

The affidavits submitted by Defendants do not establish that there is no genuine issue of material fact. Each of the affidavits states, in conclusory fashion, that the care received by Plaintiff at the Jail was "appropriate." (See, e.g., D.E. 104-6;

---

[10] With the sole exception of Rebecca Watson, who was apparently served in error, Defendants' motion does not distinguish the roles played by the various CMS Defendants in the events at issue. The Court does not have the option, therefore, of concluding that the claims against some, but not all, of the CMS Defendants should be dismissed.

D.E. 104-7; D.E. 104-9.)[11] Those affidavits cannot be credited because, as discussed, they fail to acknowledge or address the substance of Plaintiff's complaint. It is not clear whether Defendants contend that the failure to provide prescribed medication is not necessarily deliberate indifference or that, as appears more likely, the fact that Plaintiff was seen by CMS staff during his two visits to the Jail, some of which were for unrelated conditions, is itself evidence that Defendants were attentive to his needs and, therefore, not deliberately indifferent. In either case, the affidavits do not compel the conclusion that there is no genuine issue of material fact.

This aspect of the CMS Defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED this 17th day of June, 2008.

/s/ JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE

---

[11] The affidavits also state that Defendants were not deliberately indifferent. (Id.) That portion of the affidavits does not appear to be admissible, as it testifies to legal conclusions.